## MARC BRYANT *vs.* THOMAS FITZSIMMONS ET AL.

*Partnership—Purchase of Race Horse by Three Persons—Accounting for Profits.*

The evidence in this case is examined and held to show that a certain race horse was purchased by three men as co-owners, that their agreement was that it should be entered at races under the supervision of one of the parties and that the earnings of the horse should be divided among them in a certain proportion, after the payment of a balance due on the purchase price. *Held*, that a partnership existed as to the horse: that one of the parties should be enjoined from keeping exclusive possession of it; that a receiver should be appointed and an account stated of the receipts and expenditures relating to the partnership property.

*Decided June 25th, 1907.*

Appeal from the Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Wm. S. Bryan, Jr.*, and *Howard Bryant*, for the appellant,

*William J. Ogden*, for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The bill in this case was filed on the 6th of August, 1906, in the Circuit Court No. 2, of Baltimore City, by the appellees, against the appellant. The prayer of the bill is first, for the appointment of a receiver to take charge of alleged partnership property ; second, for an injunction to restrain the sale and disposition of the property by the appellant pending the decision of the case; and third, that the partnership may be dissolved, an account be taken of its business, and its effects be applied to the payment of its debts and liabilities, and the

residue be distributed among the partners according to their respective interests.

The Court below ordered an injunction and appointed Mr. Wm. J. Ogden, a member of the Baltimore bar, as receiver, with power and authority to take charge and possession of the partnership property and to collect the outstanding debts due the partners.

The bill, in substance, alleges that on May 2nd, 1906, the appellant and appellees entered into an agreement to purchase a certain race horse, called "Wild Range" to be the joint property of the three, at the sum of seven hundred dollars.

The horse was purchased from one Robert Davis upon the following terms: the appellant, Bryant, paying $250 in cash, and giving to Davis the joint note of himself and the appellee, Cherbonnier, for $450 payable ninety days after May 2nd, 1906. The appellee, Fitzsimmons, at the time of the purchase, deposited certain pawn tickets and other collaterals, covering property alleged to be worth three hundred and fifty dollars, to secure his portion of the cash advanced, and the payment of the note, at maturity.

The bill also alleges that according to agreement between the parties, the horse was to be the joint property of the appellant and appellees, each of them owning a one-third interest. The appellee, Fitzsimmons, was to take full charge, and race the horse for purses, according to his judgment, and after the payment of the necessary expenses, the profit or money realized, was to be applied first, to the payment of the note of four hundred and fifty dollars, and to the cash advancement of two hundred and fifty dollars heretofore stated, and the residue to be divided, one-half to the appellee, Fitzsimmons, and the other half to the two parties, Bryant and Cherbonnier, in equal parts.

The bill then charges that the appellant, in violation of the agreement with the partners, has collected the purses and money realized from the horse, to the amount of nine hundred and fifty dollars, and now retains the sum of five hundred and sixty-five dollars, which under their agreement should be ap-

plied to the payment of the note of four hundred and fifty dollars, due and payable on August 6th, 1906.

The bill also charges that the appellant without notice and without the knowledge of the appellees, has forcibly taken possession of the horses "Wild Range," "Officer" and "Dairy Maid" and intends to dispose of them to the loss and damage of the appellees; that the note due on the 2nd of August has been protested and remains unpaid, although the appellant has sufficient funds belonging to the partnership to pay the same.

On the 21st of August, 1906, after the appointment of the receiver, an answer was filed by the appellant, denying the partnership agreement alleged by the bill, and averring in substance that the three horses in question were purchased by him alone and were his absolute property.

The case was heard on bill, answer and testimony on a motion to dissolve the injunction, and from an order of Court passed on the 21st of February, 1907, dissolving the injunction, as to the two horses called "Officer" and "Dairy Maid," and continuing the injunction as to the horse "Wild Range" and the other property, and referring the papers to an auditor to state an account on the receipt of earnings by the horse "Wild Range," and the total and full account of expenditures for the management of the horse, this appeal has been taken.

A careful examination of the evidence, in this case satisfies us that that the race horse "Wild Range" was purchased as the joint property of the appellant and appellees as equal owners, that is each party was liable for one-third of the purchase price, and each was to own a one-third interest after it was paid for.

This agreement was consummated at the time, according to the testimony of the appellees, by the payment of $250 in cash by the appellant, by the execution and delivery of a joint note by the appellant, and appellee, Cherbonnier, to the vendor Davis, for the sum of $450, and the deposit of certain collaterals by the appellee Fitzsimmons, to cover the liability assumed by him, for the purchase price.

The profits or earnings from the partnership were to be ap-

plied after the payment of the expenses incident to the business, to the payment of the $450 note when due and payable; to the payment of the $250 in cash, advanced by the appellant, and the residue to be divided, so as the appellee Fitzsimmons was to receive one-half, the appellant and appellee Cherbonnier, the other half.

This agreement of partnership is denied by the appellant, but we think is supported by the weight of the evidence in the case, and is sufficient to establish the fact of the existence of a partnership as between the parties themselves.

Here we have the consent of the parties, the joint purchase of the property for partnership purposes, and a participation in the profits of the partnership business.

In *Thillman* v. *Benton*, 82 Md. 73, it is said: "We take it to be well settled that a partnership is a contract of some kind involving mutual consent of the parties, and when such a contract is entered into between two or more persons for the purpose of carrying on a trade or business, with the right to participate in the profits of such trade or business, then such a contract constitutes a partnership unless there be other facts and circumstances which show that some other relation existed." *Kerr* v. *Potter*, 6 Gill, 423; *Bull* v. *Schubert*, 2 Md. 55; *Heise* v. *Booth*, 40 Md. 259; *Waring* v. *Nat. Marine Bk.*, 74 Md. 278.

We have carefully examined the record and find no proof to sustain the contention that the two horses "Officer" and "Dairy Maid" were purchased by the appellees.

We therefore hold under the facts and circumstances developed in this case, that a partnership existed between these parties, as to the horse "Wild Range" and the Circuit Court No. 2, of Baltimore City, committed no error in continuing the injunction, as to this property, and in referring the case to the auditor to state an audit of the receipt of earnings, and the total account of expenditures for his management. We further hold that the net earnings of the horse after the payment of all expenditures for his management are to be applied first, to the payment of the $450 note, the $250 cash advanced by

the appellant, and the residue to be paid one-half to the appellee, Fitzsimmons, and the other half to the appellant and appellee Cherbonnier.   The proceeds from the sale of the partnership property are to be divided equally among the three partners, according to their respective interests, as herein indicated.

For the reasons stated the order of the Court below will be affirmed the costs to be paid out of the fund.

*Order affirmed, costs to be paid out of
the fund.*